ASSOCIATED GENERAL CONTRACTORS OF CALIFORNIA, et al., Plaintiffs,

v.

SAN FRANCISCO UNIFIED SCHOOL DISTRICT, et al., Defendants.

No. C 76–2244 SAW.

United States District Court, N. D. California.

Aug. 17, 1982.

---

**6.** Simmons states that she "discovered her right to cause of action on June 20, 1979".

Plaintiff's Memorandum in Opposition, at 4.

James A. Carter, Specter, Berman, Cassel & Carter, San Francisco, Cal., for plaintiffs.

George Agnost, City Atty., Phyllis Walker, Deputy City Atty., San Francisco, Cal., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ADJUDICATION OF CIVIL CONTEMPT

WEIGEL, District Judge.

Petitioners are unincorporated associations of general contractors and subcontractors engaged in the building and construction industry in San Francisco and contractors and subcontractors so engaged. Respondent is the San Francisco Unified School District, a duly organized public body consisting of the public schools in San Francisco.

On July 20, 1977, a final judgment of this Court permanently enjoined respondent as follows:

1. Defendants San Francisco Unified School District and San Francisco Board of Education, each of them, their officers, agents, successors, deputies, servants and employees, and all persons acting by, through or under them or either of them or by or through their order, or in active concert or participation with them, are hereby permanently restrained and enjoined from requiring, directly or indirectly, that any bidder, in order to be awarded a construction contract as the general contractor, must employ nonwhite owned businesses for at least twenty-five percent of the general contract dollar bid and from otherwise delineating requirements for bidding which are in conflict with the provisions of section 39640 of the California Education Code.

2. This injunction does not preclude defendants from requiring, as a condition of bidding, that bidders agree to comply with all applicable state and federal antidiscrimination laws.

This Court found that the injunction was necessary to prevent violation of California Education Code § 39640, which requires contracts to be awarded to the "lowest responsible bidder." *See Associated General Contractors v. San Francisco Unified School District*, 431 F.Supp. 854 (N.D.Cal.1977). The injunction was upheld by the Ninth Circuit, which ruled that section 39640 "... must be construed to prohibit the Board from considering *any factor other* than the amount of the bid, the minimum qualifications of the bidder as to financial ability and skills to complete the job successfully, and the quality of the bidder's past work." *Associated General Contractors v. San Francisco Unified School District*, 616 F.2d 1381, 1385 (9th Cir. 1980), *cert. denied*, 449 U.S. 1061, 101 S.Ct. 783, 66 L.Ed.2d 603 (1980) (emphasis added).

On November 17, 1981, respondent promulgated "Addendum No. 3 to the Contract Documents" (Addendum) and incorporated it in all bid contracts. The Addendum requires all bidders to submit detailed information regarding the use of minority businesses as contractors, subcontractors and suppliers, and establishes "minimum acceptable goal ranges" for various types of construction contracts. For example, a contract in the amount of $0–$999,999.00 has a "goal" for minority business participation of twenty-five percent. The Addendum states,

Any bid proposal that does not indicate the goal or list MBEs [Minority Business Enterprise] as *required*, and make a com-

mitment to the MBE requirements established by these contract documents on a timely basis will be considered *non-responsive...*

Addendum, p. 9. (emphasis added)

Thereafter, respondent solicited bids on a school district construction contract, the Yick Wo project. All prospective bidders were invited to a pre-bid conference, held on November 23, 1981, and were given bid contract documents, including the Addendum. The construction contract for the Yick Wo project was awarded to a general contractor who complied with the terms of the Addendum.

Petitioners seek an order adjudging respondent in civil contempt for violation of the permanent injunction, for costs, and for reasonable attorneys' fees. The Court, having heard argument of counsel for the parties and considered the relevant papers, pleadings and law, finds that respondent is, and has been, in civil contempt of this Court by reason of respondent's wilful failure to comply with the permanent injunction.

Respondent's use of the Addendum was in clear violation. The Addendum requires all bidders to indicate the amount of minority business participation (Addendum, p. 4). It establishes "minimum acceptable goal ranges" for minority business participation (Addendum, p. 5). It states that, "in evaluating bids, these goals will be construed as minimum requirements." (Addendum, p. 3). It also states that any bid proposal which does not make a "commitment" to the minority business enterprise "requirements" will be considered "non-responsive" (Addendum, p. 9). And it provides procedures to be followed in the event that the contract is, or is contemplated to be, awarded to "other than the apparent low bidder" (Addendum, p. 8).

Whether so intended or not, the Addendum represents a device or artifice which violates the clear intent and plain language of the permanent injunction.

Respondent's answer to the order to show cause merits little discussion. It alleges (1) that to the extent that the Addendum appears to violate the terms of the injunction, such appearance is due to "inartful drafting", (2) that the Addendum was not intended nor applied so as to *require* minority business enterprise participation as a condition of bidding or as a condition of award of the contract, (3) that prospective contractors were informed at a pre-bid conference that the Addendum only set forth "goals" and that no bid would be rejected for failure to meet them, and (4) that no bid was in fact rejected for failure to meet the "goals."

Respondent's "inartful drafting" claim is without merit. The wording of the Addendum was its responsibility. Respondent's suggestion that the Addendum constitutes a mere "appearance" of violation borders on the ridiculous. The Addendum clearly establishes that a bidder's minority business enterprise participation is a requirement for winning a contract award. Nor can respondent escape liability by claiming that prospective bidders were informed at a pre-bid conference that the Addendum only set forth "goals." Oral statements at such a conference could not and cannot vary the terms of the written contract. *See* Cal.Civ.Code § 1625; Cal. Civ.Proc.Code § 1856; *Sullivan v. Massachusetts Mutual Life Insurance Co.*, 611 F.2d 261 (9th Cir. 1979).

The fact that no bid was rejected for failure to meet the Addendum "goals" is unavailing as a defense. The terms of the Addendum were an effective barrier to prospective bidders who were unable or unwilling to comply with the Addendum requirements. Thus, responsible lower bidders were, for all practical purposes, denied the opportunity to compete, to the damage of themselves and the public.

The issue in this proceeding is not one of racial or other unlawful discrimination. It involves only the matter of respondent's disregard of a valid injunction duly handed down by this Court.

The Court finds that respondent wilfully disobeyed the Court's injunction of July 20, 1977, and that an order adjudging it in civil contempt is required to punish past viola-

tions and ensure future compliance. In addition, an award of costs and attorneys' fees is well justified. *See Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 428, 43 S.Ct. 458, 466, 67 L.Ed. 719 (1922); *Reiser v. Del Monte Properties Co.*, 605 F.2d 1135, 1137, n.2 (9th Cir. 1979); *Director, Office of Workers' Comp. Programs, U. S. Department of Labor v. Robertson*, 625 F.2d 873 (9th Cir. 1980). Based upon the foregoing, which constitutes the Court's findings of fact and conclusions of law,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. Respondent is, and has been, and is hereby adjudged to be, in civil contempt of this Court by reason of its wilful disobedience of, and its wilful failure and refusal to comply with, the Permanent Injunction of this Court entered on July 20, 1977;

2. Respondent pay Petitioner all costs incurred in prosecution of the petition;

3. Respondent pay Petitioner reasonable attorneys' fees incurred therefor.